## JOHN C. ELY *v.* THOMAS CARNLEY, Sheriff of the City and County of New York.

Where there has been no forfeiture, on the part of a mortgagor of personnal property, by non-payment of the mortgage debt within the period limited by the condition of the mortgage ; the statute is imperative in its requirement that a true copy shall be filed before the expiration of one year from the filing of the original. (2 R. S. part ii. chap. vii. title ii. § 11, marg. p. 136.)

A non-compliance cannot be excused, so as to obviate the declared effect thereof, by proving that the failure was a clerical error, and without fraudulent intent.

Where, however, an intended copy is duly filed, a clerical error in the copy itself, in order to invalidate the act of filing, must be material.

But the copy must be substantially correct, and a material variation in the amount conditioned to be paid, or a material error in the statement of the sum remaining due, will render the filing of the intended copy of no effect.

Ely *v.* Carnley.

*So held,* where, the original mortgage being for $546 19, the sum mentioned in the copy and statement was by the error of a copyist written $646 19.

Whether, when the mortage has become due and payable, the necessity of filing a copy, with the statement required by the statute, still exists, where the property continues in the possession of the mortgagor? *Quere.*

The title of the mortgagee becomes absolute by the default of the mortgagor; but the requirement of the statute is, not that the statement to be filed with the copy should specify the amount due to the mortgagee, or that he claims as such; but that a statement be filed exhibiting the interest of the mortgagee in the property claimed by virtue of the mortgage. *Per* WOODRUFF, J.

While the mortgagor is not in default, the proper mode of exhibiting the interest of the mortgagee is by stating the amount unpaid; but after default, the statement, if required, should show the default and the consequent forfeiture, whereby it will appear that the title has become absolute. *Per* WOODRUFF, J.

*It seems,* that it is unnecessary, having once filed such statement after the mortgage has become due, to again file it at the expiration of another year.

Where a jury or referees find, upon all the evidence submitted to them, that a chattel mortgage was made in good faith, for a valuable consideration, without any intent to defraud creditors or purchasers; a delay of the mortgagor to enforce payment when the debt becomes due, does not in law invalidate the mortgage as fraudulent.

ACTION by an execution creditor, against the sheriff, for a false return.

On the 26th of September, 1850, Joseph Bradley executed to Joel W. Mason a mortgage for $546 19, upon a part of his household furniture; and, on the 29th of October following, executed to Richard Tweed, jr., a mortgage for $500 98, upon the remainder of the furniture. Each mortgage was given for an existing indebtedness, arising upon the sale of goods to the mortgagor, and upon the discounting of his notes at the instance of a third person. Both were payable on demand, with interest from date, and were duly filed on the respective days of their execution. Provisions were contained in each, that the proceeds of the mortgaged property, after the payment of the debt, should be paid to the mortgagor, and authorizing possession by the mortgagor until default in performing the condition of the mortgage.

On the 20th of August, 1851, a paper, being, in all respects except one, a copy of the mortgage first mentioned, was filed with the register of New York. The variance referred to was

in the amount for which the mortgage purported to have been given; the original being for "five hundred and forty-six dollars and nineteen cents," and the sum written in the copy being "six hundred and forty-six dollars and nineteen cents." To the copy was appended and filed therewith the following certificate:

"Statement exhibiting the interest of the mortgagee in the mortgage, of which the foregoing is a copy, in the property thereby claimed by virtue thereof, and filed with such copy mortgage, pursuant to 11th section, chapter 7th, title 2d, part 2d, of Revised Statutes. There is due and unpaid to said mortgagee, on account of the principal sum mentioned in said mortgage, the sum of $646 19, made up as follows: Amount of principal, $646 19. Interest from September 26th, 1850, to August 30th, 1851, is paid, but no part of principal, $646 19.

"J. W. MASON.

"*August 30th*, 1851."

On the 13th of October, 1851, a true copy of the second mortgage, with the statement required by the statute above referred to, was filed.

On the 14th of March, 1851, the plaintiff in this cause recovered a judgment against Bradley, in this court, for $1,968 92, which was duly docketed, and an execution, on the 5th of September following, was issued thereon to the defendant, as sheriff, who delivered it to his deputy, Hillyer.

The attorney of the execution plaintiff instructed the deputy, September 27th, to levy upon the furniture; and, on the 2d of October, the latter informed the attorney that he had made the levy, but had received for foreclosure the two mortgages in question, with the usual powers of attorney.

The property was advertised for sale, and was sold on the 14th of November, the mortgagees becoming the purchasers. The furniture specified in Mason's mortgage sold for $319 45; that covered by Tweed's, for $321 31; in addition to auctioneer's fees and other expenses. And these sums were credited upon the two mortgages respectively.

In December, Mason and Tweed executed to the sheriff and

the deputy a bond of indemnity against any claim of the execution plaintiff, and the execution was returned *nulla bona.*

The cause was tried before Hon. WILLIAM KENT, late circuit judge, as sole referee. The attorney of the mortgagor, Mason, testified, under objection from the plaintiff's counsel, that the paper filed on the 20th of August, 1851, was intended to be a true copy of the mortgage first described ; that the variance from the amount stated in the original was caused solely by the undiscovered error of a clerk, who, under the attorney's supervision, undertook to make the copy ; and that the errors in the statement arose from the mistake of the attorney himself in drafting the same, he having referred to and relied upon the copy, when the certificate was drawn up.

The mortgagees were sworn as witnesses for the defendant. The plaintiff objected to their admission. The objection was overruled and an exception taken. They testified, among other things, in substance, that they were actuated by motives of humanity, and were influenced by relations of personal and family friendship to the debtor, to suffer him to continue in the possession of the property. The possession in the mortgagor remained unchanged at the time of the trial.

The referee found that the mortgages were made "for a valuable consideration," "in good faith, and without any intent to defraud creditors or purchasers." That the error in filing a copy of the mortgage to Mason "arose by mistake merely in the copyist in the first instance, and was also by mere mistake carried into the statement ; that said mistakes were innocent and wholly without fraudulent intent." And that Bradley had no real or personal property, whereof the defendent realized or might have made any part of the sum, the collection of which was directed by the execution.

A judgment for the defendant was entered upon the report, and the plaintiff appealed to the general term.

Upon the argument of the appeal, it was conceded that under the decision of the Court of Appeals, in *Howland* v. *Willetts,* December, 1853, referred to in *Catlin* v. *Hansen,* 1 Duer, 325, the plaintiff was entitled to a new trial, for error in the

admission of the testimony of Mason and Tweed in the defendant's behalf, they being indemnitors of the sheriff. (*a*) The counsel for the respective parties united, however, in requesting the court to determine the other questions involved, in order to guide them in the further prosecution of the cause, and if possible to shorten the litigation.

*Charles H. Smith*, for the plaintiff, made and argued the following points :

I. The mortgage to Mason is void for want of filing. The mortgage was for $546 19, dated and filed September 26, 1850. The year prescribed by statute within which it should have been refiled, expired September 26, 1851. On August 20, 1851, a copy of a mortgage for $646 19 was filed with a statement endorsed " exhibiting the interest of the mortgagee," as required by statute, setting forth the amount claimed as $646 19. The execution was issued September 5, 1851, and the validity of the defence as to Mason's mortgage depends in this respect upon the question whether a mortgage for $546 19 is the same thing as a mortgage for $646 19. The issue as to the filing is distinctly raised. The referee in his report does not pass upon the question, but bases his decision upon the fact found by him, that the error arose by " mistake of the copyist; that said mistake was innocent and without fraudulent intent." The testimony of the attorney to show this fact was admitted against the plaintiff's objection, and manifest error was in this. The question of fraud in fact has nothing to do with the case.

_____

(*a*) By § 398 of the Code, " No person offered as a witness shall be excluded by reason of his interest in the event of the action." The words in § 399, providing that " The last section shall not apply to a party to the action, nor to any person for whose immediate benefit it is prosecuted or defended, are repealed in the amendatory act of April 13, 1857. (Laws of 1857, vol. i. chap. 353, p. 744.) A party or person so interested may now be examined, under restrictions contained in the act last mentioned. The indemnitors of a sheriff might now, therefore, be admitted as witnesses for him, in a case like the present, upon the proper preliminary service of a notice to the adverse party.

It would have been quite as competent to allow testimony to excuse the absence of any filing, a loss of the paper on its way to the clerk's office to be filed, or even the forgetting to file it at all.

II. The sheriff, upon grounds of public policy, should be precluded from defending by virtue of the mortgages. The sheriff delivered the execution to Hillyer, his deputy, who levied it October 2, 1851. Hillyer, tempted by the more liberal spoils ($98 53) which would accrue to him by taking sides with the mortgagees, than by the smaller compensation provided by the statute for the performance of his duty to the plaintiff as a public officer, but without, up to this time, so far as it appears, any privity with the sheriff, assumed the employment by Tweed and Mason, as their private agent, to act in the collection of their mortgages, in contravention of his official duty to the plaintiff. Hillyer advertised and sold the property, and received, as the pleadings admit, the money. He did not announce that he sold it subject to the mortgages. It appears he sold the property, assuming to act under the execution. Tweed and Mason purchased at that sale, and their title comes under the execution. Hillyer never gave notice that he should sell subject to or by virtue of the mortgages, nor did he demand any indemnity. Before this, the plaintiff demanded the money in writing, and tendered an indemnity, which was refused. 1. The sheriff is estopped now to say that he did not sell under the execution, but under the mortgages. 2. Tweed and Mason, who are the real defendants, and who purchased at that sale, if the sheriff's defence takes any strength from their claims, are estopped in the same way. 3. The sheriff is only entitled to show the property out of the execution debtor, on the ground that to have taken it would subject him to an action by the claimant. That reason does not exist, because Tweed and Mason in this case could not have sued the sheriff, had Hillyer paid the money to him, and had he paid it on the execution. Their collusion with Hillyer would defeat any claim on the sheriff. Whether Hillyer would be liable to the mortgagees or not makes no difference. He is a stranger in the case, and his

obligations to them incurred voluntarily and in his individual capacity, cannot affect the plaintiff's rights. The case presents this question: The sheriff had levied on the property with the knowledge of the mortgagees, claiming to hold it notwithstanding the mortgages. They stand by and suffer him to do it without objection, and themselves become the purchasers, and take a new title under the execution. They should be held to have abandoned their mortgage claims—the sheriff could clearly recover the amount of their bids, and they would be estopped to set up their mortgages. It makes no difference in this view whether the mortgages were valid or not. The value of legal remedies depends in a great degree on the good faith and diligence of the officers appointed by law to enforce them. Had the sheriff demanded an indemnity, and thus enabled the plaintiff to occupy the position of defendant against the mortgagees, instead of being subjected to prosecute with the mouths of two witnesses unsealed against him, to swear through their own case as has resulted by the tergiversation of the sheriff in this case, the plaintiff might perhaps have never been molested by suit, or if sued, the parties in interest would not have been enabled by their own oaths to substantiate their claims. Upon every principle of public policy the sheriff would be estopped from divesting himself, as here attempted, of his official character and responsibility.

III. The mortgages are fraudulent. 1. Bradley was insolvent and so known to be by the mortgagees when he executed the mortgages. The mortgaged property was suffered to remain in the possession and use of the debtor for two or three years, subject to daily depreciation by use, as the furniture of a boarding house. The mortgages were made payable on demand and contained a stipulation that until default the debtor should remain in the quiet and peaceable possession and full and free enjoyment of the property. These facts alone are conclusive evidence of fraud. (*Griswold* v. *Sheldon*, 4 Coms. p. 582 ; *Spies* v. *Boyd*, 1 E. D. Smith, 445.) In the first case cited the mortgage was for part of the purchase money of a stock of goods, which contained a clause authoriz-

ing the mortgagor to sell the stock as his own. BRONSON, RUGGLES, JEWETT, and McCOUN, JJ., held the mortgage fraudulent because of the clause alluded to. MULLET, J., considered such not to be the construction of the clause, but agreed, and in that all the judges concurred, that such a power would be fraudulent; but MULLETT and GRAY, JJ., thought the mortgage was not properly filed. So there was a new trial, four voting on the ground of fraud, and two on the ground of want of filing. The Common Pleas case is parallel. Now the difference in fact between those cases and this is only that those were on a stock of goods of a merchant with express power to sell, providing that other goods should be substituted in place of those sold; this is on the stock in trade of a boarding house keeper, consisting of furniture, and provides for quiet possession and full and free enjoyment of the property. If this is not a power to sell, it is a power to use them up in his business. Besides, the mortgages being payable on demand, the debtor insolvent, and the possession unchanged, is conclusive evidence of a secret trust. Had the mortgage been payable *in futuro*, the possession would have been consistent with the deed. But as it is, the conclusion is irresistible that they were made payable on demand, to be ready to set in motion, as was in fact done, only to defeat the claim of some creditor with his execution, and enable the debtor to keep and use up the property. 2. There being no change of possession, the burden of proof is on the defendant, to show that the securities were made "in good faith and without any intent to defraud creditors," that is, that proof should not only be given of an honest debt, but that the mortgages were made with the single purpose to secure the debt, and without any intent to defraud. What is the proof besides that of the existence of a debt, which, it may be added, neither party ever expected to enforce? Aside from the strong negative evidence that the only witnesses being the mortgagees themselves, whose honest intent is the essence of the defence, they not only do not make oath to the *bona fides* of their intentions, nor negative the presumed design to hinder other creditors, but on the contrary

each witness confesses to precisely that intent. Each mortgage was for an old debt, and neither contained any element which is usually regarded by honest insolvents as requisite to entitle a debt to be considered "confidential." Tweed's was for two old notes he had discounted for persons other than the debtor, and Mason's was an old debt for goods sold. The articles consisted of mahogany and rosewood furniture, piano, etc., in daily use, and the possession was never for one moment changed. The explanation given for leaving the property in the use of the debtor, Tweed says, on his part, was to enable Mrs. Bradley to keep boarders. Tweed was Bradley's assignee for the benefit of creditors, the assignment, dated Nov. 2, 1850, covering the right of redemption of the mortgages. He had shortly before bought out Bradley's store, and continued Bradley as clerk, at $1,500 per annum, which employment continued for 18 months. He says, " the mortgage was made to me to secure Bradley's indebtedness." He then gives an account of the straitened circumstances of Bradley, as a reason, it is supposed, for not changing the possession, and to a question by the referee, he said, " my only object was to allow Mrs. Bradley to use the furniture, supposing Bradley was poor." So Mason said, " The mortgage was taken by me, so that I could get my pay for what he owed me." "I had been acquainted with Bradley, and he favored me when I was a new beginner, our families visited, and I understood his wife intended to keep a boarding house, and I was willing to let the things remain for her benefit." What confession could be more explicit, to prove the intent of all parties at the time the mortgages were made, that just what was afterwards done was beforehand intended to be done, and that a part at least of the intent was to enable Bradley to keep the property in spite of his creditors. Tweed's statement that the mortgage " was made to him to secure Bradley's indebtedness," and Mason's, that " the mortgage was taken by him so that he could get his pay for what Bradley owed him," are neither of them inconsistent with the ulterior intent alleged; neither alleges that the securing of his debt was the only object of the mortgage, and if he had, the

conclusion would be irresistible that he had not told the truth. The relations of the parties, their confidential and intimate acquaintance, the family intercourse, and the pertinacity with which these friends of the debtor have resisted the plaintiff's claim, all go to show that Bradley had no occasion to apprehend the enforcement of the mortgages. Besides this, there is no evidence whatever to repel the presumption that Bradley's intent was fraudulent, or any to show that the mortgagees did not know it. Moreover, every day that elapsed reduced Tweed's debt by the amount of Bradley's wages, as his clerk, which existed as an offset, and which *pro tanto* daily cancelled the indebtedness. To so much as Tweed at any time owed Bradley for wages, he could not have enforced his mortgage. The subsequent payment by Tweed of the wages could not operate in law to revive the *pro tanto* previously extinguished mortgage; but the payment could inure only as an advance of money. In this way the $1,500 salary per annum, which ran upwards of 18 months, must have many times over extinguished the mortgage. Whether the appeal is regarded as presenting the referee's decision for review in this respect, upon the ground that it is against the weight of evidence, or upon the ground that we have by the Code an "appeal upon the fact" (Code § 348), and that the court are bound to review the case and determine it as they think the referee ought to have done, which it is submitted is the true position, the referee's decision ought upon this point to be reversed. (*Thompson* v. *Blanchard*, 4 Coms. 307; *Griswold* v. *Sheldon*, ib. 583; *Hanford* v. *Artcher*, 4 Hill, 278, Walworth, Ch.; *Smith and Hoe* v. *Acker*, 23 Wend. 653; *Sturtevant* v. *Ballard*, 9 J. R. 341-2; *Felder* v. *Day*, 2 Sand. Super. 594; *Stoddard* v. *Butler*, 20 Wend. 507; *Randall* v. *Cook*, 17 ib. 54; *Butler* v. *Van Wyck*, 1 Hill, 438; *Vance* v. *Phillips*, 6 ib. 433.) In the last cited case, which is cited with approbation in 4 Coms. 591, and which has never been reversed or questioned, the Supreme Court decided that a new trial should be granted in all cases where a jury have tolerated such a transaction as this, and *a fortiori* where it is the decision only of a referee. Now suppose that just what

the parties here have done had been declared on the face of the deed, *e. g.*, that it was made for the purpose not only to secure the debt, but also in order to enable the debtor to keep the use of the property. The only purpose the law tolerates is to secure the debt. No one can say that was any part of the intention of either mortgagor or mortgagee. Nor is it possible to believe that if the security was any object, the property would have been suffered to remain and *be used up*. Besides all this, there was no reason for "motives of humanity." Bradley had no legal or equitable right to more furniture than the law allows. It is to be presumed he had so much besides. He was, and for eighteen months continued to be, in receipt of a salary of $1,500 a year, and "motives of humanity" were very much out of place, where they militated against the rights of creditors. What right had he, if an honest man, to plush sofas and pianos. Certainly the mortgagees should show a very clear case of the propriety for the exercise of motives of humanity. Besides, if any reason existed for leaving possession unchanged, it ceased when Bradley assigned all his property for the benefit of his creditors, to Tweed, the mortgagee, in less than a month after he gave the mortgage. If he wanted only to secure the debt, why not make his assignment and prefer Tweed and Mason. Again, where is there any evidence of reasonableness, as to amount, time, and value, and quantity of property (23 Wend. 666), which even Senator Hopkins, one of the most strenuous advocates of the new code of morals, declared in *Smith and Hoe* v. *Acker*, requires over and above proof of an honest debt. The property mortgaged for $1,150 in 1850, brought, a year after, $739; in the meantime having been moved and stored a part of the time, and the residue in daily use. No proof of its then value is given, nor any of how much Bradley made away with, or of how much he had, not included in the mortgage. It is manifestly the intention to let Bradley use up the property. The debts of the mortgagees will then stand good for another mortgage, on other property, and thus the debtor be afforded the means effectually of keeping his creditors at bay. Besides, the statute

says it must be made to appear "it was made without any intent to delay," etc., in other words, that a partial intent to secure the debt, and a partial motive to keep the property, are just as fatal as if the latter were the sole object. All the cases hold this—that any fraud vitiates, and it is incredible that a transaction so bare as this, of the flimsiest covering of honesty, can stand the test of judicial investigation and the parties be acquitted triumphantly of all intent to hinder creditors, when the slightest purpose of that description must be conclusively and satisfactorily negatived. Again, each of the mortgages is for a sum of money, without specifying the consideration. It was held in *Baskins* v. *Shannon*, 3 Coms. 310, that it was not enough to prove a debt without showing the connection between the debt and the mortgage. The only testimony given here is of what the intention of the mortgagees was. They merely say they took it for the debts. That such was the understanding or agreement of Bradley, neither of them states, nor does it appear.

IV. The referee erred in admitting the testimony of Tweed and Mason, who were incompetent by reason of interest, because the suit was defended for their immediate benefit. (*Catlin* v. *Hansen*, 1 Duer, 325 ; *Weston* v. *Hatch*, 6 How. Pr. R. 443 ; *Legee* v. *Burbank*, 2 E. D. Smith, 419.)

*Augustus F. Smith*, for the defendant, made and argued the following points.

I. The question of the *bona fides* of the mortgages was for the referee, sitting as a jury. (*Butler* v. *Miller*, 1 Coms. 497.) The evidence of the consideration of the mortgages, and that they were made in good faith and without any intent to hinder, delay or defraud creditors, was abundant, and so the referee found.

II. A mortgage is not void because it provides that the proceeds of the mortgaged property, after the payment of the debt, shall be paid to the mortgagor. (*Leitch* v. *Hollister*, 4 Coms. 211, 215.) Nor is it made void by the clause which authorizes the mortgagor to retain possession until default. He has the

Ely *v.* Carnley.

right without expressing it in the mortgage. It cannot affect the contract unfavorably to insert the clause.

III. The suit was not defended for the immediate benefit of Tweed and Mason within the meaning of the Code. (Code, § 399, and cases cited at pp. 402–3, Voorhies' Code; *Bean* v. *Canning*, 2 E. D. Smith, 419.

IV. The refiling of the Mason mortgage was sufficient. The statute requires a copy of a mortgage to be refiled. (2 R. S. 136, § 11.) It cannot be contended that the statute requires that the copy should be a fac simile of the original, or of the first copy filed—that every *t* should be crossed, and every letter the same; nor will any immaterial variance affect the validity of the filing. 1. The statute will receive a fair construction to meet the end proposed by the legislature, to wit: to give notice of the continuing life of the mortgage, and to show the interest of the mortgagee therein. 2. Suppose the amount in this case had occurred twice—once in figures, and once in words— and there was an error in one, could not that error be corrected by the other? Errors are continually aided by construction. This is true of wills, which by the statute of frauds, are required to be in writing. (*Millish* v. *Millish*, 4 Ves. 45; *Phillips* v. *Chamberlaine*, 4 Ves. 51.) So the case of a clerical omission. (*Penniman* v. *Barrimore*, 6 Mart. Lou. Rep. 497–8; 3 Phillips' Ev. 1394, note 950, ed. of 1839.) 3. Nor, to aid by construction, is it necessary that the error should be made manifest by the instrument itself. You may go out of it, to other papers actually or impliedly referred to. (3 Phillips' Ev. 1420, note 958.) In this case it is apparent by the fact that the statement is indorsed, that this paper is a refiling. A comparison of this with the first mortgage filed immediately shows the error. The reference is sufficient, it needs but to be slight. (3 Phillips' Ev. 1420, note 958.) On comparison the dates are the same—the signature, the witness, the property, the amount even to the cents, except there is a six for a five. And there is no other similar mortgage. There is no fraud—no one is deceived or injured. Surely the mortgagee complied with the law in the spirit, and sufficiently to the letter. We show how

the mistake arose, and contend that we have a right to correct the error now—no fraud appearing, and no injury to the plaintiff. (3 Phillips' Ev. 1394, note 950 ; *Johns* v. *Church*, 12 Pick. 557 ; *Fuller* v. *Acker*, 1 Hill, 473.

V. The testimony of the attorney of the mortgagor was proper to show that the error was without fraud.

INGRAHAM, FIRST J.—It was conceded upon the argument that the referee erred, in admitting Tweed and Mason as witnesses for the defendant, within the recent decision of the Court of Appeals. Tweed and Mason being the indemnitors to the sheriff, the suit was defended for their immediate benefit.

A question arises in this case as to the refiling of a copy of one of the mortgages on the goods in question, which we were requested in the arguement to decide. The copy of the mortgage was duly filed and the statement was duly endorsed thereon, excepting that an error was made both in the copy and in the statement, in stating the amount secured by the mortgage and the amount due thereon to be one hundred dollars more than it was. It was shown that such error was the mistake of the copyist, and was innocent and without fraudulent intent, and the referee so found.

The objection to the admission of the evidence to show that the mistake was that of the copyist, was, I think, unavailing. As between the mortgagee and the sheriff on a question of fraudulent intent, such testimony is admissible. (*Fuller* v. *Acker*, 1 Hill 473.)

There is more difficulty however in regard to the sufficiency of the copy filed with the register and of the statement as to the amount due.

The statute is positive in requiring a true copy to be filed within thirty days pending the expiration of one year from the filing of it, with a statement exhibiting the interest of the mortgagees in the property claimed therein, and in default thereof declares that such mortgage shall cease to be valid against creditors. The validity of the mortgage does not depend upon any fraudu-

lent intent but upon the act of filing a true copy with the statement annexed thereto. (*Thompson* v. *Blanchard*, 4 Coms. 303.)

If an erroneous copy can be received as sufficient, then the whole force of the statute is destroyed, because it makes the validity of the mortgage to depend not on filing the true copy, but on the proof that no fraud was intended or harm done. The very evil which the statute was intended to prevent would be furthered if the filing of a mortgage for a greater sum than was really due could be deemed a compliance with its provisions.

A question somewhat similar in the principles governing it was decided in this court in May term, 1845, *Larbeg* v. *Soule* and others. In that case a duplicate original mortgage was filed as a copy at the expiration of the year without the statement of the mortgagee's interest. It appeared to me in that case that there was another ground upon which the case should have been decided, which would render such error immaterial. If the mortgage had became due and payment had not been made by the mortgagor, his interest in the property mortgaged had terminated and the title had vested in the mortgagee. There was no equity of redemption remaining on which the sheriff could levy, and if no title was in the mortgagor, filing of the copy was unnecessary. In other words, that it is only necessary to file a copy of the mortgage while the forfeiture by new payment has not taken place. That the interest of the mortgagor is not subject to a levy after the forfeiture is held in 8 Johns. R. 96, and distinctly recognized as law by Senator Verplanck in *Smith* v. *Acker*, 23 Wend. R. 668. See *Bailey* v. *Burton*, 8 Wend. 339. And in *Dane* v. *Mallory*, 16 Barb. S. C. R. p. 50, it is also said that the mortgagee has an absolute interest in the thing mortgaged, and that it can be levied on and sold as his property. If the copy of the mortgage must be filed annually to confirm the title of the mortgagee, after his title has become perfect by forfeiture, it would be necessary to continue such filing annually after sale to confirm the title of a purchaser under it. In the case in this court above referred to, my breth-

ren differed with me on this question, and held that the mortgage was not valid although after forfeiture, for want of a proper statement being filed at the time of the second filing.

It does not appear whether the mortgage in this case was due or not before the execution was issued, and these remarks may not be applicable to it. I have referred to this case in order that the former adjudication of this court on the question may be known to the parties.

WOODRUFF, J.—I concur in the opinion of the first judge, that where there has been no forfeiture on the part of the mortgagor by non-payment of the mortgage debt within the period limited by the condition of the mortgage, the statute is imperative and unrelaxing in its requirement that a true copy shall be filed before the expiration of the term of one year from the filing of the original, and that non-compliance cannot be excused so as to obviate the effect thereof declared by the statute, by proving that the failure was a mere clerical error. This excuse is no better than proof that the failure arose from the forgetfulness or neglect of the clerk employed to bear the copy to the proper office, or from an honest mistake, by filing the copy in the wrong office, or other unintentional failure to comply with the statute. The clerical error in the copy filed, however, must, I think, be in some material particulars, and not in such as have no effect upon the nature or effect of the instrument, or the rights of the parties under it. The accidental omission in the copy of words not affecting the sense, or of words which the intelligent reader must readily supply, ought no more to impair the effect of filing the copy, than the omission to make the copy with the same capital letters, or to use figures invariably instead of words, if figures only are employed in the original, or the like immaterial deviations.

But the error of inserting a widely different sum in the copy as the mortgage debt, is not, I think, of this latter description. The statute, in the use of the term "true copy," plainly means that the copy shall be at least substantially correct, and no part

of the mortgage is more plainly matter of substance than the amount of the debt secured.

The design of the legislature was to enable creditors and purchasers to learn the precise condition of the property found in the possession of the mortgagor, and they were not bound, when they found the two papers on file, to speculate upon the question whether what purported to be a copy of a mortgage for $646 19, was in fact intended to be a copy of an original on file for $546 19, or to inquire whether in truth there was not some other original mortgage for $646 19.   The probability that they would suspect a mistake is very strong, but to hold that the vitality of the original mortgage was continued upon that ground, would, I think, be a dangerous tampering with the explicit declaration in the statute, that such original " shall cease to be valid unless a true copy be filed."

I am, however, not satisfied that even if the mortgage has become due, and the day for payment has passed, the necessity of filing such copy, with the statement required by the act, no longer exists, if the property continues in the possession of the mortgagor.   I recognize the rule that the title of the mortgagee becomes absolute by such default of the mortgagor ; but it should be observed that the requirement of the statute is not that the statement to be filed with the copy should specify the amount due to the mortgagee, or that he claims as mortgagee, but it is that a statement shall be filed " exhibiting the interest of the mortgagee in the property thereby claimed by him by virtue thereof."   While the mortgagor is not in default, the proper mode of exhibiting the interest of the mortgagee is by stating the amount unpaid.   And after default, I apprehend that the statement should show the default, and the consequent forfeiture, by which it will appear that the title has become absolute.

The object of the statute is to give creditors and purchasers notice of the mortgagee's claim.   His title begins in a mortgage to secure the payment of the sum secured.   At the end of the year a part of the sum may have been paid, or the whole sum may have been paid, or by reason of default, the title may have

become absolute. Of the actual condition of the property (still found in the mortgagor's possession, with all the *indicia* of ownership), the creditor has a right to be informed, and the legislature intended that he should be informed by the prescribed statement, to wit, a statement exhibiting the interest of the mortgagee. I perceive no sufficient reason why his statement that his interest has become absolute, should not as well be deemed within the requirement of the statute, as that his interest has been modified by a partial payment.

If he takes possession on the happening of the forfeiture, then, indeed, no statement or copy is necessary. The whole condition of things, to which the statute is applicable, is changed. The change of possession takes the case out of the purview and design of the statute, and out of the range of the evils against which the statute was intended to guard.

It is probably unnecessary, after having filed such a statement, to renew it at the end of another year, for the purposes of the statute are answered. He is no longer mortgagee, but owner, and his interest in that respect has been declared and made known to all persons to be affected thereby. But in the first instance he was mortgagee, and nothing else, and if he continues to claim under the mortgage instrument, he is bound, I think, by the statute to make and file the statement showing every change in his interest under that instrument, whether it arise from partial payments or a total default and forfeiture.

These suggestions of course apply alone to the mortgage to Mason. The original mortgage to Tweed appears to have been in full force when it was foreclosed, the year not having then expired.

In regard to the question also urged upon us, whether these mortgages ought not to be declared fraudulent upon the general ground that no sufficient reason is shown for suffering the property to remain in the possession of the mortgagor, I am satisfied with the finding of the referee, that the mortgages were made in good faith, for a valuable consideration, and without any intent to defraud creditors or purchasers. And where such was in truth the purpose and object of the parties, I cannot

agree that a creditor may not receive a mortgage and suffer the debtor to retain his goods until he makes default in the payment of the mortgage debt; nor that a humane delay in requiring immediate payment where the debt is payable on demand, if there was no other motive, warrants us in saying that the mortgage is itself fraudulent. The circumstances may all be laid before a jury or referee, but the question of fraud, in such case, is by the statute expressly made a question for the jury. (2 R. S. [197] § 4.)

We have given our impressions upon these questions, in compliance with the request of counsel, though not necessary to the decision of the case.

Upon the ground that the indemnitors of the sheriff were improperly admitted as witnesses in his behalf, the judgment was set aside, the referee's report opened, and the case referred back, with liberty to either party to produce additional proofs. Costs to abide the event.